## IN THE MATTER OF LAWRENCE and others, Bankrupts.

*(District Court, S. D. New York.   January 15, 1881.)*

1. BANKRUPTCY—SURVIVORS OF FIRM—CHOSE IN ACTION—JUDGMENT—
LIEN ON REAL ESTATE—MARSHALLING FIRM ASSETS—GENERAL AS-
SIGNMENT IN TRUST FOR CREDITORS—SIGNATURE OF FIRM—TITLE
OF ASSIGNEE IN BANKRUPCY—ESTOPPEL—SUBROGATION OF SURETIES.

Where the five bankrupts and their father constituted a firm, and
as such used real estate belonging to him as firm property, and he died,
leaving it to them by will as tenants in common, and they alone con-
tinued the same business under the name of the old firm, assuming its
liabilities, taking all the assets and using the real estate as part there-
of, and they brought suit in the state court on a promissory note
received by the old firm on account of goods sold by it, which resulted
on appeal in a judgment against them for costs—the judgment, the
docket, and their own complaint describing them as "surviving part-
ners of themselves" and their deceased father—and four days before
it was docketed they made an assignment of all their property, includ-
ing the land, signed by the three of them only individually and in the
firm name by one of them as attorney in fact, there being no other
evidence of his authority to sign for the other two,—

On application of the judgment creditor for payment out of the pro-
ceeds of the sale of the land by the assignee :

*Held,* that the description of the bankrupts as "survivors" related
not to the capacity in which they sued, but the mode of deriving their
title, and as such was mere surplusage, and the lien of the judgment
was the same as it would have been if this description had been omit-
ted.

Also *held,* that the judgment, being a firm obligation, and the real
estate firm property, though the legal title was in the bankrupts
individually, neither the copartners nor other copartnership creditors
had any superior equities, as against the judgment creditors, which
would, as in case of a judgment against one partner on his individual
debt, prevent the attaching of the lien.

Also *held,* that under the New York law (St. 1877, c. 466) requir-
ing that a general assignment in trust for creditors should "be in
writing, and duly acknowledged before an officer authorized to take the
acknowledgment of deeds," the general assignment in this case should
have been executed and acknowledged by all the members of the firm,
the same as is required in a deed of real estate, and that the assign-
ment was void and inoperative to transfer any title or interest.

*Held, further,* that, as the assignee in bankruptcy sold the land and
received its proceeds under his title as assignee in bankruptcy, the
assignment having been treated by all parties in interest as inopera-
tive in respect to the land, it will be presumed that he received it as
property vested in the bankrupts when the petition in bankruptcy

was filed, and, having so taken it, he took it subject to all perfected liens then existing, and is estopped to set up the general assignment to defeat the lien of the judgment creditor.

Sureties for judgment debtors, who, after the attaching of a lien in favor of the judgment creditor, have been compelled to pay a part of the judgment debt, are thereupon entitled to be subrogated to the rights of the judgment creditor, in respect to the lien, to the extent to which they have paid the debt, and therefore, in this case, the bankrupts' sureties who had paid, after judgment against them, part of the judgment against the bankrupts, are entitled to the benefit of the judgment creditor's lien to the amount paid by them.

*E. Seymour*, for petitioners.

*Geo. Bell*, for assignee.

CHOATE, D. J.   This is an application by a judgment creditor for payment of his judgment out of the proceeds of real estate sold by the assignee under the order of the court. The ground of the application is that the judgment was a lien on the real estate at the commencement of the bankruptcy proceedings.

Prior to March, 1872, the five bankrupts and their father, Henry Lawrence, were partners in business under the firm name of Henry Lawrence & Sons. The real estate in question then stood in the name of Henry Lawrence, but was, in fact, partnership property. By his will Henry Lawrence devised it to his five sons, the bankrupts, who continued to hold the legal title as tenants in common till their bankruptcy in May, 1878, except so far as it may have been affected, if at all, by the general assignment hereinafter referred to. After the death of Henry Lawrence the five bankrupts continued the same business under the same firm name, till their failure, using and treating the real estate as part of their partnership assets, taking all the assets of the old firm, and assuming all its liabilities, arranging with the executors of Henry Lawrence to have his interest and capital in the concern, or a large part of it, remain as a loan to the new firm. The old firm of Henry Lawrence & Sons had dealings with the firm of Merrifield & McDowell, holding notes of that firm, and having a balance of account against them for goods sold. In 1874 the bankrupts sued the firm of Merrifield & McDowell, joining as defendant one Edward L. Merrifield, claiming that

he was liable as a general co-partner in that firm. In their complaint the bankrupts, plaintiffs therein, described themselves as "surviving partners of themselves and Henry Lawrence, deceased." After a verdict in favor of the plaintiffs against all the defendants, exceptions on behalf of Edward L. Merrifield were sustained by the general term of the court, and a new trial was granted to him. The plaintiffs appealed to the court of appeals, giving stipulation, with sureties, as required by the law of New York. The court of appeals affirmed the order of the general term, and thereupon, in accordance with the law of New York in such a case, the defendant Merrifield had judgment absolute against the plaintiffs for his costs, amounting to the sum of $947.15, which was duly entered and docketed in Kings county, where these lands are situated, on the second day of May, 1878. In the judgment, and in the docket memorandum of it, the judgment creditors are described as "James Lawrence, Seabury Lawrence, George W. Lawrence, William Lawrence, and Henry Lawrence, as surviving partners of themselves and of Henry Lawrence, deceased." Afterwards Merrifield, the judgment creditor, sued the sureties on the undertaking given by the bankrupts upon their appeal to the court of appeals, and recovered judgment against them for $543.63, which has been paid. To this extent Merrifield's judgment for costs has been paid, but the sureties who have paid this sum for the bankrupts join in this petition, claiming to be subrogated to the rights of Merrifield under his judgment.

On the twenty-ninth day of April, 1878, before Merrifield's judgment was docketed, an instrument was executed, which is now relied on by the assignee in bankruptcy to defeat this application, as being a general assignment by the firm for the benefit of creditors. The parties named in the paper as parties thereto are the five bankrupts, "copartners in trade, doing business, etc., under the style, etc., of Henry Lawrence & Sons, parties of the first part, and Ezekiel Y. Bell, etc., party of the second part." It recites the insolvency of the parties of the first part, and purports to assign, transfer, and set over all the property, including real estate, of the parties of the

first part, except what is exempt from execution, and all property whatsoever in which they have any right, title, or interest, upon the trusts usual in general assignments. The paper is signed "Henry Lawrence & Sons, by Seabury Lawrence, attorney in fact;" also by three of the partners, James, Seabury, and George W. Lawrence, and by Bell, the proposed assignee. A seal is affixed to each signature. It was duly acknowledged on its date by James, Seabury, and George W. Lawrence, individually, and by Bell. The notary also certifies as follows: "Before me, personally, came Seabury Lawrence, the attorney in fact of Henry Lawrence & Sons, known to me to be the individual described in, who, as such attorney, executed the foregoing instrument, and who acknowledged that he executed the same as the act and deed of said Henry Lawrence & Sons therein described, and for the purposes therein mentioned." There is no evidence, except what appears on the paper itself, that the two copartners who did not execute the assignment consented to it or authorized its execution by Seabury Lawrence, on their behalf, or on behalf of the firm.

Upon this state of facts it is objected by the assignee in bankruptcy that the judgment was not docketed against the bankrupts individually or as an existing firm, but was recovered and docketed against them as survivors of a former firm; that, inasmuch as the real estate was not the real estate belonging to them as survivors, but real estate which they owned in their own right, the judgment is not a lien. I think there is nothing in this objection. The description of the plaintiffs in the complaint and in the judgment is mere description, and nothing more. Calling them survivors did not make them, and them alone, any the less plaintiffs in their individual right and capacity. It is unlike the describing of a plaintiff as an executor, which purports to define the capacity in which he sues, and therefore is inconsistent with his prosecution of the action in his own right and individual capacity. Describing a person as survivor is merely describing, not the capacity in which he sues, but the mode in which his title is derived. As a description it is immaterial and

surplusage. A survivor of a firm holds the title to a chose in action to which he survives as absolutely and individually as if he had bought it. This judgment and the docketing of it have, therefore, the same effect, as is if the description of the judgment debtors as survivors had been omitted.

It is next objected that the firm was insolvent at the time the judgment was docketed, as shown by the general assignment executed four days before; that in such a case the real estate of the firm, as this was, is required to pay the firm debts, and is, in equity, personalty, and therefore, as the judgment lien is only on the actual existing interest of the judgment debtors in the land, neither of these judgment debtors individually had any interest which a creditor could take on execution, or to which the statute lien would attach. The general principle here invoked against these petitioners, that in equity the real estate of a firm is, for some purposes, treated as personalty, and that an individual creditor of one of the partners gets a lien by his judgment on the interest of his debtor in the land, subject to the equitable rights of the copartners against the same for the payment of the partnership debts, is not controverted. If, therefore, this were a judgment against one or several of the partners, less than all, and not against them all, and upon a firm debt, there might be ground for the objection. But the claim sued on was an alleged chose in action belonging to the firm. The judgment recovered is clearly an obligation of the firm. The property on which the lien is claimed was the property of the firm. The legal title to the property was in the judgment debtors individually, and is subject to the lien, unless the superior equity of some other party or parties prevents the attaching of the lien for the protection of such superior equity.

In the case of a judgment on an individual debt against one partner, that which prevents the attaching of the lien according to the legal title is such a superior equity of his copartners to have the land devoted to the payment of the partnership debts rather than to the debts of one of the partners. In this case the copartners have no such superior equities to be

protected, because the debt on which the judgment was recovered was a firm debt. The equities here run with the statute lien, and not against it. The attaching of the lien effects the application of firm property to the payment of a firm debt, and neither the copartners *inter sese* nor other firm creditors are injured in their rights, legal or equitable, thereby. As between the petitioners and other firm creditors, the petitioners are entitled to the advantage which their greater diligence gives them in obtaining a perfected lien before the commencement of bankruptcy proceedings.

Lastly, it is objected that under the general assignment of the twenty-ninth of April the title to this real estate, or, at any rate, an equitable interest in it, passed to the assignee named therein, and that this defeats the lien of a judgment afterwards docketed. It is insisted, however, by the petitioners that the general assignment was void and inoperative for any purpose of vesting a title or an equitable interest under the law of New York. And I think this view is correct. The statute regulating general assignments for the benefit of creditors, (St. 1877, c. 466,) provides that every such assignment "shall be in writing, and shall be duly acknowledged before an officer authorized to take the acknowledgment of deeds." This, it seems to me, necessarily implies that the assignment, in case of a firm, shall be signed, executed, and acknowledged by all the members of the firm as a deed of real estate is required to be executed and acknowledged, and that an assignment not so executed is inoperative. Two of the partners did not sign this instrument, nor was there any proof whatever of the authority of Seabury Lawrence, who purports to have signed it as attorney in fact for the firm, to sign it on their behalf, if, indeed, a signature in the firm name, with authority from them, would be equivalent to a signature in their names. This requirement of the act of 1877, that all the partners should join in the assignment, was in accordance with the established rule of law as held in the state of New York before the passage of that act, that copartners have no authority as such to bind each other by a general assignment of the firm property to a trustee for

creditors. *Wells* v. *March*, 30 N. Y. 344; *Gates* v. *Andrews*, 37 N. Y. 659; *Hayes* v. *Heyer*, 3 Sandf., S. C. 297; *Haggerty* v. *Granger*, 15 How. Pr. 247; *Cook* v. *Kelly*, 14 Abb. Pr. 466.

Whatever might be the effect of this general assignment, however, there is another ground on which the assignee cannot avail himself of it to defeat these petitioners. It appears by the statement of facts that the land has been sold by the assignee in bankruptcy under the order of this court, and he holds in his possession the proceeds. It would seem, therefore, clear that, as to this real estate at least, the assignment was inoperative, and never sought to be enforced by the parties in interest. It does not appear that the assignee in bankruptcy has recovered it in a suit in equity to set the assignment aside, or that his claim to it, notwithstanding the assignment, has ever been questioned or resisted. Such facts, if they existed, could have been shown by the assignee, and they cannot be presumed in the absence of evidence. The assignee, therefore, stands in the position of having received this property, by virtue of his right as assignee in bankruptcy, as property vested in the bankrupts upon the filing of the creditors' petition. He has received all the benefits of such title, and of course he took it subject to its burdens, among which is this lien then existing. I think, under these circumstances, the assignee is estopped to set up this general assignment to defeat the petitioners' lien.

The sureties of the judgment debtors, who have paid part of the debt, are entitled to the benefit of the lien which the petitioner Merrifield had at the time they made the payment to him.

An order will be entered directing the assignee to pay the claim of the petitioners out of the moneys in his hands, with interest and costs.